Judge Marsham.
delivered the Opinion of the Court.
Lucy Mims, claiming title to a female slave Edy and her infant child, brought this action of detinue, in 1835, to recover them from Benjamin A. King. A verdict and judgment having been rendered for the plaintiff, and the ' defendant’s motion for a new trial having been overruled, a reversal of the judgment is sought in this Court, by appeal.
It is now contended that the Circuit Court erred in admitting improper evidence, which was objected to, and excepted to, by the defendant; and that the verdict was against law and the evidence in the case.
Plaintiff’s evidence of title to the slave in controversy.
A deed having been made in Va. which, by the laws ofthat state, was required to lie there recorded, to give it validity— the production of a certified copy from the record, is sufficient evidence of the conveyance,without the original; and is also sufficient evidence of the execution of the original, when it is produced, and found to corres pond with the certified copy.
The plaintiff claimed title to the slaves under the will of her husband, Robert Mims, who died in 1828, and a deed of gift from his mother, Elizabeth Mims, to him, purporting to be executed in Goochland county, Virginia, in 1806, and to give to him a negro woman slave, Lucinda — reserving to herself the use of said slave during her own life; and proved, that Elizabeth Mims died in 1833, in Virginia, and that Edy was the child of Lucinda, and was born some years after the date of the deed of gift, and before the death of the donor.
In making out this title, the original deed of gift was read in evidence, and also a duly authenticated copy of the same deed from the record of the Court of Quarter Sessions of Goochland county, importing that the deed had been proved in said Court, by the three subscribing witnesses, within a few days after its date, and ordered to be recorded.
The only direct proof, made on the trial, of the execution of the original deed, was the deposition of one of the subscribing witnesses, who merely stated that he had witnessed the instrument; that he remembered the transaction well; that it had taken place in his own house. The reading of the deed upon this evidence, was objected to by the defendant, who also excepted to its admission by the Court. And the propriety of admitting it to be read in evidence to the jury, is one of the questions now made. But it is obvious that, if the deed was such an instrument as was required by the laws of Virginia to be proved and recorded, the production of a copy, duly certified and authenticated, so as to show that the original had been proved and recorded according to law, and that the copy was taken from the record, renders it immaterial whether the other proof now offered of the execution of the original deed, was in itself sufficient or not: first — because such a copy was of itself sufficient to prove the gift, without the production of the original; and, second — because such a copy with its certificates and authentication was itself sufficient evidence of the execution of the original, corresponding as it does with the copy, and having the same certificate of its proof in the Quarter Sessions Court of Goochland. *269 By the laws of Virginia, in force at the time of the separation of Kentucky from that State, and which, in the absence of all evidence to the contrary, we will presume to have remained in force, a deed of gift of a slave whereof the donor remains in possession, was required to be proved and recorded as this appears to have been. Pyle vs. Maulding, 7 J. J. Marshall, 206; and as this ■ deed is upon its face a deed of gift of a slave of which the possession is not only expressly reserved to the donor, but seems to have actually remained with her, we are of opinion that it was necessary to prove and record the instrument, and that the authenticated copy from the record, was all sufficient, either to authorize the dispensing with the original, or to prove it when produced. Whether, therefore, there was or was not any error in admitting the original deed upon the direct proof above noticed, the proof was amply supplied by the production of the authenticated copy; and the error, if any, was either cured, or rendered harmless.
At the time of the separation of this State from Virginia, her statutes required ', that a deed of gift of a slave, of which the donor remained in possession , should be proved and re corded ; and, in the absence of evidence to the contrary, this court presumes the law is still in force there.
To make an er-groundforrever* sal’tth® re®®r^ may have op-grated to the pre judice of the par ty ’ complaining ®fit-, ness was asked tbn^and'The'ob jeetionsto it be-“fs “a^ered'; but the record does not show what the answer was, or that it was prejudicial to the objector: the error will not reverse ■the judgment.-A testator, after sundry devises and bequests, desires that his executors shall sell a designated tract of land,' and that; after payment of his debts out of the proceeds, the balance shall go to his wife, towards her support, and towards the support and education of a son, whom, he says, he wishes to have supported out of the balance of his estate; and, by a residuary clause, he gives to his wife, during &e. all the balance of his estate, real, personal, &c. — part of which balance was a slave, the subject of the present controversy. Held, that this devise to the wife, with these directions as to the support, and schooling of the son, does not impose upon the executors the duty of educating the son, nor vest in them any interest in the estate and effects thereby devised. The slave, therefore — passing by the will like land — went directly to the widow ; and she can maintain an action for its recovery from an adverso claimant, without the assent of the ■executors to the legacy, or to the suit.
A second question as to the admissibility of evidence, grows out of the Circuit Court’s having permitted the plaintiff to ask, and the witness to answer, whether, since the commencement of the suit, he had heard the executors of Robert Mims say, that they had agreed to . . ,. . r . / , ,. , . its institution belore it was brought: to which permission the defendant excepted. But the bill of exceptions taken to this opinion, m the progress of the trial, does not state what answer the witness gave. And the general bill of exceptions taken to the opinion of the Court •overruling the motion for a new trial, states that the same witness swore that the executors had consented *270 that this suit might be brought in. the name of the plaintiff, and gives no statement corresponding with the particulars of the question objected to. The witness, for all ^at appears, may have answered the question in the negative, or he may, in answer to that question, have stated what, according to the import of the genei’al bill of exceptions, he seems to have stated in some part of his examination, simply that the executors had consented that the suit might be brought in the plaintiff’s name. And in either case, no improper evidence having been actually given, the mere permission of an improper question to be asked, (conceding the question to have been improper,) could not have prejudiced the defendant, and could, therefore, be no ground for reversal.
But whatever answer may have been given, or whatever may be implied from the bill of exceptions, we are of opinion that the assent of the executors was not in this case necessary to the title of the plaintiff, but that she took directly under the will whatever title or interest the testator had, and could devise in the slaves now in question. In the first six clauses of the will, the testator makes specific bequests and devises to his children —none of which include the slaves in contest. In the seventh, he desires that his executors should sell a designated tract of land, and that, after payment of his debts out of the proceeds, the balance should go to his wife, towards her support and towards the support and schooling of his youngest son, David, whom, he says, he wishes to be supported and schooled out of the balance of his estate. In the eighth and last clause, he gives to his wife, the present plaintiff, all the balance of his estate, real and personal, &c. during her life or widowhood, and directs its disposition after her death.
It is not denied that, under this devise, whatsoever title the testator had in the slaves in question, passed directly to the plaintiff, unaffected by the general power or interest of the executors, merely as such. But it is contended that the direction in the seventh clause, that the youngest son shall be supported and schooled out of the balance of the estate, imposes a duty upon the executors in that respect, and gives them such an interest *271 in the balance, as prevents the complete investiture of title in the slaves included in the devise of the balance, without their assent. Without stopping to enquire whether, under the statutory enactment, that slaves shall pass by last will as lands, an express direction that the executors should support and school the testator’s son out of the balance of his estate, would have obstructed the passing of the title of these slaves, under the express devise of the balance to the wife, we are of opinion that the duty referred to, is not imposed by the will upon the executors, and therefore implies no interest in them. The charge of supporting and schooling is thrown upon the balance of the estate after it passes into the hands of the wife, and not before. This is manifest from the directions that the executors shall pay to the wife so much of the proceeds of the land, as should remain after payment of debts, although that remainder was to go, not only to the support of the wife, but also to the support and schooling of the son. As it thus clearly appears, that she was relied upon to apropriate to this latter purpose, the surplus money which was expected to be actually in the hands of the executors in the first instance, it cannot be implied that the executors were relied upon to make further appropriations for the same purpose out of the balance expressly devised to her. We are of opinion, therefore, that the will gives to the executors no interest in the balance devised to the wife; and that the general direction, that the youngest son should be supported out of the balance, did not so affect the title of such slaves or lands as, not being specifically disposed of by previous clauses of the will, were included in the general bequest of the balance to the plaintiff, as to render the assent of the executors at all material.
The assent of the executors being unnecessary to vest the title of these slaves in the plaintiff, or to enable her to bring or maintain her suit for them, the evidence introduced for the purpose of proving such assent, was wholly irrelevant. And although, on that account, it might and should have .been excluded — yet, as it could have had no possible bearing upon any material question in the case, and could not have misled or confused the *272 jury in their finding, the defendant could not have been prejudiced by the admission of the whole or any part of it.
Wbeie evidence was admitted erroneously, and, after a verdict against the opposing party, he moves for a new trial , without making that error one of the grounds, it may be inferred that the subsequent proceedings had made it immaterial.
By an act of Va. passed in 1819, if any person, having a life estate in slaves, removes them out of the State, the" life estate is forfeited to the remainder-man :— held ¡that the forfeiture was inten ded exclusively for the benefit of the remainder-man,who may re nounce or waive ;t; and if he does so, the statute of limitations which may bar his right or confirm the title of an adversary holder, in five years, will not commence running until the ter mination of the life estate.
Qw. whether the courts of this State would enforce such a forfeiture under a foreign law.
Qw. also, whether the forfeiture
It may be remarked that the admission of illegal testimony on the trial, is not included among- the grounds on which the motion for a new trial was made in the Circuit Court. From which circumstance, though not amounting to a conclusive waiver of the exceptions previously taken, it may be inferred that when the case-was entirely through, the objections to the testimony ' excepted to, were found to be wholly removed, or the testimony itself to have been wholly immaterial.
Other objections were made to the admission of evidence in the Circuit Court, but they do not appear to require notice, and have not been insisted on in this Court.
It is contended, however, that upon the evidence before the jury, the verdict cannot be sustained, and should have been set aside by the Circuit Court. No question is made as to the title of Elizabeth Mims, or as to the efficacy of her deed of gift of 1806Í to vest in the donee, Robert Mims, a vested remainder in the slave Lucinda; nor is it questioned that, under this gift, Robert, the do-nee in remainder, was entitled to Edy, the child of Lucinda, born after the date of the gift; and Elizabeth Mims having died in 1833, the right of the remainder-man to the possession had become immediate before the comtnencement of this suit. But it is contended, that the right of Robert and of his devisee is lost or barred by the failure to assert it in proper time. The facts upon which this claim is founded, are these. — In 1818, Elizabeth Mims made an absolute deed of gift of the girl Edy to Elizabeth Bibb, which was duly proved and recorded. And in 1823, the mother of Elizabeth Bibb, who had, until then, resided in the vicinity of Elizabeth Mims, brought Edy to Kentucky, and delivered her to Elizabeth Bibb, the wife of Henry G. Bibb. And Edy has remained in possession of Bibb and wife, and of King, who purchased her from Bibb, ever since, under a claim of ownership. As applicable to these facts, a statute of the State of Virginia, passed in 1819, was *273 read to the jury; by which it is enacted, in substance, that, if any person having a life-estate in slaves in that State shall remove them therefrom, the interest of the tenant for life shall be forfeited to the person in remainder. And it is argued that, by reason of the removal-of Edy, as above stated, and by force of this statute, the estate for the life of Elizabeth Mims was wholly destroyed, and the title and interest of Robert Mims, the remainderman, became immediate; that he had, therefore, a right of action for Edy from the moment of her being brought to Kentucky; and that having been then, and ever since, until his death, a resident citizen of Kentucky, his right was barred, and in fact vested in Bibb, by the failure to sue within five years from the time when he might have sued.
would be incurred by a removal of the slave by a third party .without the active agency of the tenant for life or remainder-man, & to the state where they both reside.
Qti. also, whether the statute of limitations could be set up in the court of appeals, when it was not pleaded or relied on, in the court below.
But waiving the enquiry whether the Courts of Kentucky would or should, have aided Robert Mims in enforcing such a forfeiture, inflicted by the laws of Virginia, for an act which could not be complete within that State; and waiving, also, the enquiry whether the removal of a slave by a stranger to the estate or interest, is such a removal as would incur the forfeiture under the act, when the person entitled to the remainder, as well as the person claiming the interest alleged to be forfeited, resided in Kentucky at the time of the removal, and when it does not appear that either the original tenant for life, or her donee, Bibb, participated actively in the removal; and conceding (without deciding) that, if the facts show that, under the operation of the statute of Virginia contended for, there was a bar by the statute of limitations, it should be noticed and enforced in this Court by a reversal of the judgment, though the defendant did not plead the statute, and does not appear to have insisted upon it, in any manner, in the Circuit Court: still, we are of opinion that the forfeiture was designed'exclusively for the benefit of the remainderman; that the statute intended to confer on him an optional right, and not to force upon him an estate different from that which he had taken by contract; much less to subject him to a forfeiture of his own original remainder, if he will not promptly enforce the for *274 feiture of the preceding estate. The statute does not execute itself. It does not, by its own virtue, enforce the forfeiture, or displace absolutely either of the estates. And, if the remainderman, having previously consented to the removal of the property, or having subsequently approved or acquiesced in it, or having express! y or tacitly renounced all claim to a forfeiture, awaits his time according to the original limitations of the estate, it seems to us that he may thus rest upon his own original title, with the same security as if the statute had not declared a forfeiture. In this case, there was evidence before the jury, from which they had a right to infer a renunciation of the forfeiture by Robert Mims, for the benefit of Bibb and King. And direct evidence of such a renunciation was offered by the plaintiff, but rejected by the Court.
In detinue for a negro woman,& a child about 18 months old, it was proved that the woman had been long in pos session of the de fendant, and of the man of whom he bought her, $• that she had bee» seen, with her infant child, since the commencement of the suit: upon this evidence as to defts. possession , the jury found for the pltf. as to the child, as well as the mother: the presumption that it would not have been taken from her at so tender an age,is indulged, and the verdict sustained.
*274 But according to our view of the operation and intention of the statute of Virginia, such evidence was unnecessary. It was sufficient that the remainderman did not enforce, or even attempt to enforce, the forfeiture; but rested solely upon his original right in remainder. And as that right has been asserted by suit within about two years after .the termination of the life upon which it depended, it was wholly unaffected by lapse of time, or length of possession under the gift to Mrs. Bibb.— Betty vs. Moore, 1 Dana, 236; Boone vs. Dyke’s Legatees, 3 Mon. 637.
Bibb having been the voluntary donee of the slaves, and not a purchaser, and it not appearing that King, who purchased from him, had been five years in possession before the commencement of the suit, the question as to the necessity of recording the deed of gift to Robert Mims, in Kentucky, under our statute of frauds, does not arise, and has not been made.
The only remaining question upon the verdict is, whether there was sufficient evidence to authorize the jury to find that the infant child of Edy was in possession of the defendant at or before the commencement of the suit. The evidence on this subject is not explicit, as stated in the bill of exceptions. But, in addition to the fact already stated, that Edy had been in possession *275 of Bibb, and of King, who purchased from him, ever since 1823, the witness stated that “he had seen her in King’s possession frequently before the suit was brought, and that, since the commencement of the suit, he had seen her in Hopkinsville together with her infant child.”
The grounds for a new trial, and bills of excep--tions, show, that some instructions were given, others refused; but as the instructions are not in the record, this court must presume that the court below decided upon them correctly.
The child is described in the declaration as being about eighteen months old, and it may be inferred from the testimony, that it could not have much exceeded that age when the suit was brought. If King bought Edy before the birth of the child, as he continued in possession of Edy, he must' have been in possession of the child at its birth and afterwards. If he bought her after the birth of the child, it may be reasonably inferred from the age of the child, that, if he did not buy it with the mother, which would be a rational presumption, it was at least taken into his possession with her. The fact that it was seen with her in Hopkinsville, though after the commencement of the suit, corroborates the inference from the other facts. We cannot, therefore, say that the verdict as to this point; is unsupported by the evidence.
It would seem from the grounds filed on the motion for a new trial, and also from the bill of exceptions to the opinion overruling that motion, that instructions to the jury had been given on motion of the plaintiff, and others refused, which had been asked for by the defendant. But as the record contains no instructions whatever, we cannot presume that the Court erred, either in giving or refusing any. And there being in other respects no error to the prejudice of the appellant, the judgment is therefore affirmed.